**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**PALM BEACH DIVISION**
www.flsb.uscourts.gov

*In re:*

ICAN BENEFIT GROUP, LLC, *et. al.*[1]

        Debtors.        /

Chapter 11
Case No.: 21-12567-MAM
Case No.: 21-12568-MAM
Case No.: 21-12569-MAM
Jointly Administered with Case No.: 21-12567-MAM

**EMERGENCY MOTION BY DEBTORS-IN-POSSESSION**
**PURSUANT TO 11 U.S.C. §§ 105, 361, 362, AND 363, BANKRUPTCY**
**RULES 4001(b) AND 6003, FOR INTERIM ORDER (A) AUTHORIZING**
**USE OF CASH COLLATERAL; (B) FINDING THAT SECURED CREDITOR**
**IS ADEQUATELY PROTECTED; AND (C) SCHEDULING FINAL HEARING**

*Hearing requested on or before March 23, 2021 at 1:30 p.m.*[2]

Debtors-in-Possession, ICAN BENEFIT GROUP, LLC, ("Benefit Group"), ICAN HOLDING, LLC, ("Holding"), and ON CALL ONLINE, LLC ("OnCall," and together with Benefit Group and Holding, referred to collectively as the "Debtors") as debtors-in-possession, by and through undersigned proposed counsel, pursuant to 11 U.S.C. §§ 361 and 363, respectfully request an order of this Court (a) authorizing the Debtors to use cash collateral on an interim basis; (b) approving adequate protection arrangement to secured creditor Southern Guaranty Insurance Company ("SGIC" or the "Lender"); and (c) scheduling a final hearing (the "Motion"), and in support thereof, states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, as applicable, are: iCan Benefit Group, LLC (5888); iCan Holding, LLC (8944) and On Call Online, LLC (2496). The Debtors' mailing address is 5301 N Federal Highway, Suite 375, Boca Raton, FL 33487.
[2] At which time the Court has other hearings scheduled in this matter.



**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

## **PRELIMINARY STATEMENT**

By this Motion, the Debtors seek to use the cash collateral of the Lender pursuant to the three-week budget (the "Interim Budget"),[3] attached hereto as **Exhibit "A."** The specific purpose of the proposed use of cash collateral can be found in the Interim Budget, and is generally intended to preserve the going concern value of the Debtors' property and maintain ordinary course operations for the benefit of all creditors and parties in interest. The Debtors respectfully submit that the Lender will be adequately protected as to the use of cash collateral requested herein because: (i) the use of cash collateral will preserve the Debtors' value; (ii) the Debtors propose to grant the Lender replacement liens on post-petition assets, the value of which are in excess of the Lender's secured claim[4]; and (iii) the amount of cash collateral to be used in this interim period is *de minimus* given that the largest ordinary course of business expense is payroll (an expense that will be covered by the Debtor's prepetition Payroll Protection Program loan, which is a liability of the Debtor and not subject to Lender's lien).

## **JURISDICTION**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a).

---

[3] The Debtors are currently in the process of preparing a long-term budget and will seek to retain a financial advisor for that purpose. Notice of the prospective final budget will be provided to Lender and all interested parties in advance of the final hearing on this Motion.

[4] According to Premier's own analysis dated on or around August 2020 (which analysis was prepared in the context of due diligence presented by the Lender Group to several potential lenders and/or acquirers), the value of the Debtor's business (assuming zero growth to strategic growth) over a ten-year period ranges from $33 million to over $60 million.

2. The statutory predicates for the relief requested herein are sections 105, 361, 362, and 363 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 4001, 6003 and 9012 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

## BACKGROUND

### A. The Debtors and Their Operations

3. On March 18, 2021, the Debtors commenced these Bankruptcy Cases by each filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "<u>Petition Date</u>"). Both Debtors are operating their business and managing their affairs as debtor-in-possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

4. No trustee, examiner, or statutory committee has been appointed in these cases.

5. Holding is headquartered in Boca Raton, Florida and is the 100% interest holder of Benefit Group and OnCall. Benefit Group is a licensed insurance agency with agents located in Florida and Texas.[5] Benefit Group offers a variety of lifestyle benefit programs and insurance products from a number of licensed insurance carriers. Products and carriers vary by state in the jurisdictions where Benefit Group does business, which jurisdictions include all States in the continental United States, excluding Washington State and Alaska. Benefit Group's mission is to bring accessible and affordable insurance to all Americans, not only health care, but to financial assistance and lifestyle improvement benefits as well.

6. OnCall is the holding company for iCan Benefit Group's telemedicine platform. This platform allows consumer's access to telemedicine, a safe, fast and convenient way to have access to a doctor for minor health issues 24 hours a day, seven days a week.

---

[5] In California, Benefit Group operates under the d/b/a "iCan Benefit Insurance Agency, LLC."



**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

B.  **The SGIC Loan**

7. On or about November 7, 2018, SGIC and Benefit Group along with its subsidiaries and/or affiliates, The Law Store Service Company, LLC, iCan Insurance, LLC, iCan IP Holdings, LLC, iCan Media, LLC and InteractiveMD, LLC (the "Initial Borrowers"), entered into the *Loan and Security Agreement* (the "Initial Loan"), pursuant to which SGIC agreed to advance a loan to the Initial Borrowers in the principal amount of $3,200,000.00[6]. The Initial Loan contains a security agreement securing the loan.

8. **Dale Schmidt is the CEO of SGIC and upon good information and belief, owns and/or solely controls SGIC.**

9. The Initial Loan is evidenced by the Term Note, executed by the Initial Borrowers, dated November 7, 2018, in the principal amount of $3,200,000.00.

10. SGIC filed a form UCC-1 Financing Statement with the Florida Secured Transaction Registry on November 8, 2018, under File No. 201806977417.

11. On or about March 19, 2019, SGIC and Benefit Group, Holding along with its subsidiaries and/or affiliates, OnCall, The Law Store Service Company, LLC, iCan Insurance, LLC, iCan IP Holdings, LLC, iCan Media, LLC and InteractiveMD, LLC[7] (collectively, the "Borrowers"), entered into the *Amended and Restated Loan and Security Agreement* (the "Amended Loan"), pursuant to which SGIC agreed to advance additional funds to the Borrowers in the amount of $1,926,306.99. The Amended Loan contains a security agreement which secures the loan.

---

[6] It is unclear at this time whether SGIC actually funded the full principal amount. Pursuant to the Amended Loan (as defined herein), SGIC states that it only advanced $2,800,000.00 under the Initial Loan. *See* Initial Loan, § 2.3(a).
[7] The Amended Loan added Holding and OnCall as additional borrowers.

4



12. There is no promissory note evidencing the additional funds that SGIC agreed to advance under the Amended Loan.

13. SGIC filed a form UCC-1 Financing Statement with the Florida Secured Transaction Registry on March 20, 2019, under File No. 201908175409.

14. As additional security for the Amended Loan, Stephen Tucker executed and delivered to SGIC a Bad Boy Guaranty ("Bad Boy Guaranty"), dated March 19, 2019, pursuant to which Tucker guaranteed payment to SGIC upon the occurrence of certain "Prohibited Acts."

15. In connection with the Amended Loan, the Borrowers and SGIC entered into the Management Agreement ("Management Agreement"), dated March 19, 2019, whereby the Borrowers were required to retain CD Paradise Management, LLP ("Paradise").

16. **Dale Schmidt is the CEO of Paradise and upon good information and belief, owns and/or solely controls Paradise.**

17. Paradise was retained to provide "consulting services as requested from time to time by the [Borrowers] regarding management and operation of the [Borrowers] …" *See* Management Agreement, § 1.1(a).

18. The Management Agreement prohibits Borrowers from making any payments or expenditures, unless made to SGIC to pay down the Amended Loan, to Paradise for management fees, or pursuant to a budget preapproved by Paradise.

19. Although the Management Agreement severely restricts the Borrowers control of its own finances, Paradise is not required to actually perform any management services under the Management Agreement. *See* Management Agreement, § 1.1(a) ("It is specifically acknowledged and agreed that the Manager is not obligated to provide any specific Management Services, only

agentis

55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com

those Management Services that the Manager agrees to provide from time to time in its discretion.")

20. Additionally, in connection with the Amended Loan, on or about March 19, 2019, Premier Administrative Solutions, Inc. ("Premier") and Benefit Group entered into the Master Services Agreement (the "TPA").

21. **Dale Schmidt is the CEO of Premier and upon good information and belief, owns and/or solely controls Premier.**

22. Pursuant to the TPA, Premier performed certain services for Benefit Group, including: (i) collection of insurance premium payments, (ii) deposit of insurance premiums into a Premium controlled account, (iii) maintenance account records, and (iv) disbursement payments to Benefit Group and third parties pursuant to established procedures.

23. Additionally, in connection with the Amended Loan, on or about March 19, 2019, SGIC, Premier, Paradise and Dale Schmidt[8] (the "Lender Parties") and the Borrowers and Mr. Tucker, entered into the Option Agreement (the "Option Agreement") (collectively, the Amended Loan, Management Agreement, TPA, Bad Boy Guaranty and Option Contract, are defined as the "Loan Documents") whereby the Borrowers granted an option to the Lender parties to purchase substantially all of the assets, or equity interests, of the Borrowers.

## RELIEF REQUESTED AND BASIS THEREFOR

24. Any cash or cash equivalents, funds or proceeds of or derived from the collateral securing the obligations of the Debtors to Lender under the Loan Documents constitute Cash Collateral within the meaning of Section 363 of the Bankruptcy Code.

---

[8] Dale Schmidt is the control person for SGIC, Premier and Paradise. Mr. Schmidt signed the Option Agreement as Chairman of SGIC, Chief Executive Officer of Premier, Chief Executive Officer of Paradise, and on behalf of himself personally.



25. An immediate and critical need exists for the Debtors to be permitted access to Cash Collateral in order to continue to operate its business and preserve their ongoing, enterprise value. In the absence of an order granting the use of Cash Collateral, serious and irreparable harm to the Debtors and their estates will occur.

26. Pursuant to Section 363(c)(2) of the Bankruptcy Code, if a lender's interest in Cash Collateral is valid, a debtor may use such Cash Collateral only with the Lender's consent or Court approval.

**CASH COLLATERAL AND THE RELIEF SOUGHT BY THE DEBTORS**

27. By this Motion, the Debtors seeks an emergency interim hearing (the "Initial Interim Hearing") in accordance with Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"). At the Interim Hearing, the Debtors will seek entry of an order (the "Initial Interim Order," a copy of which is attached hereto as **Exhibit "B"**) authorizing the Debtors to use Cash Collateral to continue their business operations and to pay their regular daily expenses, pursuant to the Interim Budget, that are necessary to avoid immediate and irreparable harm to their estates pending a further interim hearing on the Motion.

28. The Debtors' expenditures shall be limited to those expenditures specifically authorized in the Interim Budget, where amounts are so provided, on a cumulative line-by-line basis. In addition, the Debtors shall not pay any pre-petition debt except as may be specifically authorized by this Court, upon proper notice, motion and hearing.

29. Further, by this Motion, the Debtors further seek a final hearing (the "Final Hearing") on this Motion, to be held approximately 21 days after the date of this Motion in accordance with Bankruptcy Rule 4001(b)(2) and (3).

**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

30. In connection with the Debtors' proposed use of Cash Collateral hereunder and in order to provide the Lender with adequate protection for the aggregate diminution of the Cash Collateral resulting from the Debtors' use thereof, the Debtors have agreed, subject to approval of this Court, that the Lender, shall have, as of the commencement of this Chapter 11 cases, a post-petition replacement lien pursuant to 11 U.S.C. §361(2) on and in all property of the Debtors acquired or generated after the Petition Date, but solely to the same validity, extent and priority, and of the same kind and nature, as the lien(s) the Lender had on the Debtors' assets as of the Petition Date.

31. The Debtors also request that they be authorized: (i) to exceed any line item on the Interim Budget by an amount equal to ten percent (10%) of each such line item; or (ii) to exceed any line item by more than ten percent (10%) so long as the total of all amounts in excess of all line items for the Interim Budget do not exceed ten percent (10%) in the aggregate of the total Budget.

32. The Debtors request that the replacement liens granted to the Lender pursuant to the terms hereof be at all times subject and junior to: (i) the fees of the Office of the United States Trustee pursuant to 28 U.S.C. § 1930; (ii) any court costs, and (iii) the fees and expenses for Court approved professionals in the amounts and as set forth in a prospective approved final budget (collectively, the "<u>Carve Out</u>"). Supplemental to the replacement liens provided to the Lender hereunder, the Debtors will furnish the Lender with such financial and other information as required by the prepetition Loan Documents or other reports as the Lender reasonably requests.

33. The replacement liens granted to the Lender hereunder in connection with the use of the Cash Collateral shall be valid and perfected without the need for the execution or filing of any further documents or instruments.

agentis

**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

## APPLICABLE AUTHORITY FOR RELIEF REQUESTED

A. **Standard under Section 363 of the Bankruptcy Code.**

34. The Debtors' use of estate property is governed by Section 363 of the Bankruptcy Code. Section 363(c)(l) provides that a debtor may use estate property in the ordinary course of business without notice or a hearing. Section 363(c)(2) imposes specific limitations upon property that constitutes cash collateral and provides that a debtor can only use, sell or lease cash collateral either if the entity with an interest in the cash collateral consents or the Court authorizes such use. 11 U.S.C. § 363(c)(2). Accordingly, for the reasons stated herein, this Court should approve the Debtors' use of the Lender's Collateral pursuant to Section 363(c)(2) of the Bankruptcy Code.

B. **The Court Should Enter an Order Authorizing the Continued Use of Cash Collateral Because the Debtors Are Providing the Lender with Adequate Protection.**

35. Pursuant to the terms hereof, the Debtors are providing and will provide adequate protection to the Lender as contemplated and required by Sections 361, 363(c)(2)(B) and 363(e), respectively, and hereby seeks the Court's approval thereof. The Bankruptcy Code does not explicitly define "adequate protection," but does provide a non-exclusive list of the means by which a debtor may provide adequate protection, including "other relief" resulting in the "indubitable equivalent" of the secured creditor's interest in such property. *See* 11 U.S.C. § 361. What constitutes adequate protection must be evaluated on a case-by-case basis. *In re Swedeland Dev. Group Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) (*citing In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. l987)); *In re Martin*, 761 F.2d 472, 476 (8th Cir. 1985). Adequate protection is meant to ensure that the secured lender receives the value for which it originally bargained. *Swedeland*, 16 F.3d at 564 (*citing O'Connor*, 808 F.2d at 1396) ("the whole purpose of adequate protection for a creditor

is to ensure that the creditor receives the value for which he bargained pre bankruptcy"). Courts have noted that "the essence of adequate protection is the assurance of the maintenance and continued recoverability of the lien value during the interim between the filing . . . and the confirmation." *In re Arriens*, 25 B.R. 79, 81 (Bankr. D. Or. 1982). The focus of the requirement is to protect a secured creditor from diminution in value during the use period. *See In re Kain*, 86 B.R 506, 513 (Bankr. W.D. Mich.1988); *In re Becker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); *In re Ledgmere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990).

36. The Debtors' requested use of Cash Collateral and the protections afforded to the Lender herein, including but not limited to replacement liens, in light of the circumstances, are reasonable, appropriate, and sufficient to satisfy the legal standard of "adequate protection" and will serve to maintain the value of the Lender's collateral.

### i. The Use of Cash Collateral Will Preserve the Debtors' Going Concern Value, Which Will Inure to the Benefit of the Estates.

37. The continued operation of the Debtors' businesses will preserve and maintain their going concern, enterprise value and enable the Debtors to continue to operate. However, as discussed above, if the Debtors are not allowed to use Cash Collateral, business operations will be substantially interrupted. This would result in a significant diminution in the value of the Debtors' assets (including the Cash Collateral) to the detriment of the Lender, unsecured creditors and the bankruptcy estates.

38. It is well established that a bankruptcy court, where possible, should resolve issues in favor of preserving the business of the Debtors as a going concern:

> A debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use "cash collateral" in its effort to rebuild. Without the availability of cash to meet daily operating

55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com

> expenses such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure would be frustrated.

*In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017, 1019 (11th Cir. 1984).

39. Accordingly, courts authorize the use of cash collateral to enhance or preserve the debtor's going concern value. For example, in *In re Stein*, 19 B.R. 458 (Bankr. E.D. Pa. 1982), the court allowed a Debtor to use cash collateral where the secured party was undersecured, finding that the use of cash collateral was necessary to the Debtor's continued operations and the creditor's "secured position can only be enhanced by the continued operation of the [Debtor's business]." *Id.* at 460; *see also Federal Nat. Mort. v. Dacon Bolingbrook Assocs.*, 153 B.R. 204, 214 (N.D. Ill. 1993) (security interest protected to extent Debtors reinvested rents in operation and maintenance of the property); *In re Constable Plaza Assoc.*, 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991) (Debtor's reinvestment of rents to maintain and operate office building "will serve to preserve or enhance the value of the building which, in turn, will protect the collateral covered by [the] mortgage"); *In re Dynaco Corp.*, 162 B.R. 389, 395-96 (Bankr. D.N.H. 1983) (finding that the alternative to the Debtor's use of cash collateral, termination of its business, would doom reorganization and any chance to maximize value for all creditors); *In re Karl A. Neise, Inc.*, 16 B.R. 600, 602 (Bankr. S.D. Fla. 1981) (marginally secured creditor adequately protected by lien on postpetition property acquired by Debtors; Debtors can use cash collateral "in the normal operation of their business").

40. As discussed above, the Debtors will use Cash Collateral in the ordinary course of its business to, among other things, continue to operate and maintain their operations. If the Debtors cannot continue to use Cash Collateral, they will likely be forced to cease operations and convert these cases to Chapter 7. This cessation would irreparably damage the Debtors' business by causing, among other things, employee attrition, lost revenues, loss of business reputation and

loss of ability to sell the business as a going concern. By contrast, granting authority will allow the Debtors to maintain operation and preserve the going concern value of its business, which will inure to the benefit of the Lender and all other creditors.

### ii. Lender is Adequately Protected by the Grant of Replacement Liens on Post Petition Assets

41. The Bankruptcy Code expressly provides that "granting a replacement lien is a means of adequate protection." 11 U.S.C. § 361(2). Granting replacement liens provides ample adequate protection of the secured creditor's interest in cash collateral. *See, e.g., In re O'Connor*, 808 F.2d at 1393; *In re Dixie-Shamrock Oil & Gas. Inc.*, 39 B.R. 115, 118 (Bankr. M.D. Tenn. 1984). The Debtors will adequately protect the Lender's interests in Cash Collateral by, among other things, providing post-petition security interests in the Debtors' assets of the same type as the Lender held pre-petition to the extent the Debtors' use of Cash Collateral results in a post-petition decrease in the value of the Collateral securing the Lender's claims. Such post-petition security interests will be of the same validity and priority as the Lender's pre-petition liens and security interests.

42. The Debtors believe that use of Cash Collateral pursuant to the terms and conditions set forth above is fair and reasonable and adequately protects the Lender. The combination of: (i) the Debtors' ability to preserve the going concern value of the business with the use of Cash Collateral; (ii) the post-petition liens granted to the Lender (iii) the right to assert super-priority administrative expenses granted to the Lender herein, and (iv) providing the Lender with the other protections set forth herein, including the availability of financial reporting. For all of the reasons stated above, this Court's approval of the Debtors' use of the Lender's Cash Collateral is proper herein.

**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

**WHEREFORE** the Debtor respectfully requests entry of an interim order substantially in the form attached hereto as **Exhibit "B"** (a) authorizing the Debtors to use cash collateral, pursuant to the attached Budget or pursuant to Court order; (b) finding that the Lender is adequately protected; (c) granting replacement liens in favor of the Lender; (d) scheduling a final hearing on the Motion; and (e) granting such other and further relief as this Court deems equitable and appropriate under the circumstances.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by transmission of Notices of Electronic Filing generated by CM/ECF to counsel for the Lender and other parties registered to receive electronic notices of filing on the Service List below in the manner indicated on March 20, 2021.

>       AGENTIS PLLC
>       *Proposed Counsel for Debtor-in-Possesion*
>       55 Alhambra Plaza, Suite 800
>       Coral Gables, Florida 33134
>       T. 305.722.2002
>       www.agentislaw.com
>
>       By:  /s/ Jesse R. Cloyd
>              Robert P. Charbonneau
>              Florida Bar No: 968234
>              rpc@agentislaw.com
>              Jacqueline Calderin
>              Florida Bar No: 134414
>              jc@agentislaw.com
>              Jesse R. Cloyd
>              Florida Bar No: 58388
>              jrc@agentislaw.com

**Service List**
*Via Electronic Mail*
Southern Guaranty Insurance Company
13600 ICOT Boulevard
Building A
Clearwater FL 33760-3703
E: ccutler@fredlaw.com



**EXHIBIT "A"**

## iCAN Interim Cash Budget

| | Notes | 2021 | | |
|---|---|---|---|---|
| | | March 18-24 | March 25-March 31 | April 1-April 7 |
| **Beginning Cash on Hand** | 1 | $ 472,222.00 | $ 433,843.00 | $ 462,443.00 |
| | | | | |
| **Incoming Wires - Collections** | | | | |
| CS - Major Med | | 16,560.00 | 7,360.00 | 6,440.00 |
| CS - TPA HCCUA | | 18,400.00 | 27,600.00 | 5,520.00 |
| CS - TPA NCE | | 3,680.00 | 16,560.00 | 3,680.00 |
| CS - iCan Holding | | 3,680.00 | 4,600.00 | 3,680.00 |
| CS - iMD Checking | | 8,280.00 | 17,480.00 | 3,680.00 |
| **Total Available Cash** | | $ 524,843.00 | $ 507,443.00 | $ 485,443.00 |
| | | | | |
| **Expenses - Cost of Sales** | 2 | | | |
| Tele Doc | | | | $ 3,000.00 |
| | | | | |
| **Expenses - Operating Expenses** | | | | |
| Payroll and Payroll Taxes | | 71,000.00 | | 71,000.00 |
| Independent Contractors | | | | |
| Health and Gap Insurance | | | | |
| Commercial and Worker' Compensation Insurance | | | | |
| Rent/Storage | | | | 3,026.00 |
| Cellphone and internet | | | | 1,000.00 |
| IT/Tech Support | | | | 4,400.00 |
| Chapter 11 Debtor's counsel - Agentis | | | | |
| Chapter 11 Financial Advisor - Carol Fox | 3 | | 25,000.00 | |
| Accounting and Tax | | | | |
| Data center and Cloudbased storage | | | | 1,211.00 |
| Office supplies & expenses | | | | 50.00 |
| Travel expenses | | | | |
| Third Party Administrator Fees | | | | 40,000.00 |
| State Annual Report Fees | | | | 5,000.00 |
| Agent Licensing | | | | 3,500.00 |
| Marketing | | 20,000.00 | 20,000.00 | 21,233.00 |
| Software Licenses | | | | 20,000.00 |
| **Total Expenses** | | $ 91,000.00 | $ 45,000.00 | $ 173,420.00 |
| | | | | |
| **Other Uses of Funds** | | | | |
| Adequate protection payments | | | | |
| PPP Loan | | | | |
| EIDL Loan | | | | |
| **Total Other Uses of Funds** | | $ - | $ - | $ - |
| | | | | |
| **Ending Cash** | | $ 433,843.00 | $ 462,443.00 | $ 312,023.00 |

| | Notes |
|---|---|
| 1 | $386,191 is from PPP Loan (and booked as a liability) |
| 2 | The costs of goods listed herein exclude all payments made to vendors by the Debtor's Third Party Admnistrator ("TPA") which account for approximately 52% of gross sales collected by the TPA |
| 3 | Projected retainer for financial advisor |

## EXHIBIT "B"

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**PALM BEACH DIVISION**
www.flsb.uscourts.gov

*In re:*

ICAN BENEFIT GROUP, LLC, *et. al.*[1]

      Debtor.    /

Chapter 11
Case No.: 21-12567-MAM
Case No.: 21-12568-MAM
Case No.: 21-12569-MAM
Jointly Administered with Case No.: 21-12567-MAM

**INTERIM ORDER GRANTING EMERGENCY MOTION BY
DEBTORS-IN-POSSESSION PURSUANT
TO 11 U.S.C. §§ 105, 361, 362, AND 363, BANKRUPTCY
RULES 4001(b) AND 6003, FOR INTERIM ORDER (A) AUTHORIZING
USE OF CASH COLLATERAL; (B) FINDING THAT SECURED CREDITOR
IS ADEQUATELY PROTECTED; AND (C) SCHEDULING FINAL HEARING**

THIS CASE came before the Court for a preliminary hearing on March ___, 2021 at _____:_____ a.m./p.m. (the "Preliminary Hearing") on the *Emergency Motion by the Debtors-In-Possession Pursuant to 11 U.S.C. §§ 105, 361, 362 and 363, Bankruptcy Rules 4001(b) and*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, as applicable, are: iCan Benefit Group, LLC (5888); iCan Holding, LLC (8944) and On Call Online, LLC (2496). The Debtors' mailing address is 5301 N Federal Highway, Suite 375, Boca Raton, FL 33487.

*6003 and Local Rules 4001-2 and 9013-1 for Interim Order (A) Authorizing Use of Cash Collateral (B) Finding that Secured Creditor is Adequately Protected; and (C) Scheduling Final Hearing* [ECF# __] (the "Motion")[2] filed by Debtors-in-Possession, ICAN BENEFIT GROUP, LLC, ("Benefit Group"), ICAN HOLDING, LLC, ("Holding"), and ON CALL ONLINE, LLC ("OnCall," and together with Benefit Group and Holding, referred to collectively as the "Debtors"). Through the Motion, the Debtors seek an order (a) authorizing the Debtors to use cash collateral on an interim basis; (b) approving adequate protection arrangement to secured creditor, Southern Guaranty Insurance Company ("SGIC" or the "Lender"); and (c) scheduling a final hearing. The Court, having considered the Motion, the arguments and proffers of counsel, the record made at the Preliminary Hearing, and for the reasons stated orally and recorded in open court that shall constitute the Court's record, finds it appropriate to enter this Interim Order granting interim relief. Accordingly, it is

**ORDERED:**

1. **Granted.** The Motion is **GRANTED** on an interim basis subject to the terms and conditions set forth below.

2. **Service.** Service of the Motion and notice of the Preliminary Hearing and on the Motion were adequate and appropriate under the circumstances of these chapter 11 cases as contemplated by Section 102(l) of the Bankruptcy Code and 4001(b)(2) of the Federal Rules of Bankruptcy Procedure.

3. **Cash Collateral Authorization.** Subject to the provisions of this Interim Order, the Debtors are authorized to use Cash Collateral effective as of the Petition Date going forward to pay: (i) amounts expressly authorized by this Court, including payments to the United States

---

[2] Any and all capitalized terms not expressly defined herein, shall bear the meaning ascribed to them in the Motion.

Trustee for quarterly fees; (ii) the current and necessary expenses set forth in this Interim Order and the budget attached as **Exhibit "A"** (the "Interim Budget"), plus an amount not to exceed ten (10) percent for any line item per month and cumulatively per month of up to ten (10) percent and thereafter in accordance with Provision 4 below; and, (iii) such additional amounts as may be expressly approved in writing by the Lender or by further order of this Court. This authorization will continue until further order of the Court. Except as authorized in this Interim Order, the Debtors are prohibited from use of Cash Collateral. However, expenditures in excess of the line items in the Budget or not on the Budget will not be deemed unauthorized use of Cash Collateral, unless the recipient cannot establish that the expense would be entitled to administrative expense priority if the recipient had extended credit for the expenditure.

4. **Debtor Obligations.** Debtors shall timely perform all obligations of the Debtors-in-Possession required by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the orders of this Court.

5. **Adequate Protection.** As adequate protection for the extent of the Debtors' use of cash collateral pursuant hereto, the Lender shall have effective as of the Petition Date a replacement lien pursuant to 11 U.S.C. Section 361(2) on and in all property acquired or generated post-petition by the Debtors to the same extent and priority and of the same kind and nature as the secured lender's pre-petition liens and security interests in the Cash Collateral.

6. **Without Prejudice.** The provisions of this Interim Order are without prejudice to: (i) any subsequent request by a party in interest for modified adequate protection or restrictions on use of Cash Collateral; (ii) any other right or remedy which may be available to the Lender.

7. **Enforcement.** The Court shall retain jurisdiction to enforce the terms of this Interim Order. The provisions of this Order shall remain in full force and effect unless modified or vacated by subsequent order of this Court.

8. **Final Hearing.** A Final Hearing has been scheduled for April \_\_\_\_\_, 2021 at _____:_____ a.m. / p.m.

9. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

10. The Court retains jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

### #

**Submitted by:**
Jesse R. Cloyd
Florida Bar No.: 58388
jrc@agentislaw.com
AGENTIS PLLC
*Proposed Counsel for the Debtors in Possession*
55 Alhambra Plaza, Suite 800
Coral Gables, Florida 33134
T: 305.722.2002
www.agentislaw.com

Attorney Cloyd is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of this order.

4