UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| ICAN BENEFIT GROUP, LLC, | Case No. 21-12567-MAM |
| | *Jointly Administered with:* |
| ICAN HOLDINGS, LLC, | Case No. 21-12568-MAM |
| ON CALL ONLINE, LLC, | Case No. 21-12569-MAM |
| Debtors. | |
| _____/ | |

**VERIFIED RESPONSE IN OPPOSITION TO
DEBTORS' EMERGENCY MOTION TO USE CASH COLLATERAL**

Southern Guaranty Insurance Company ("SGIC") hereby responds in opposition to the motion of ICAN BENEFIT GROUP, LLC ("Benefit Group"), ICAN HOLDING, LLC ("Holding"), and ON CALL ONLINE, LLC ("OnCall," and together with Benefit Group and Holding, the "Debtors") for order authorizing use of cash collateral (the "Motion") [ECF No. 13]. The Motion should be denied because (i) the Debtors have access to other cash that appears sufficient to fund their proposed expenses without resorting to using SGIC's cash collateral; and (ii) the Debtors have provided incomplete and misleading information and have failed to carry their burden of proving that SGIC's interest in the Debtors' cash collateral will be adequately protected.

**PRELIMINARY STATEMENT**

1. SGIC asserts that these bankruptcy cases have been commenced solely to protect the interests of the owner of the Debtors, Steven Tucker, from the consequences of his actions pre-filing, and to frustrate and delay enforcement of SGIC's rights. As described below, SGIC holds

an option to purchase the assets of the Debtors and was in the process of negotiating terms of its exercise of that option that would have provided substantial benefits to the Debtors and their other creditors.  In the midst of those negotiations, the Debtors filed their petitions on March 18, 2021. SGIC believes that the Debtors have and will continue to sustain cash losses in its businesses and ultimately these cases will fail when the Debtors have exhausted available cash, to the detriment of SGIC and the other creditors of the Debtors. Indeed, the Debtors' proposed cash collateral budget demonstrates that the Debtors' cash on hand and cash to be received will decline during the three-week period from $524,843 to an ending cash balance of $312,023. Without serious reductions in expenses, it appears the Debtors will quickly run out of cash to pay operating expenses and other chapter 11 administrative expenses.

2.      Moreover, the Debtors' budget note 1 lists $386,191 of proceeds from a PPP loan. SGIC does not claim a perfected security interest in the PPP loan proceeds and does not object to use of those funds to pay expenses in the budget.  That cash appears to be sufficient to pay expenses during the initial requested period of use.  Therefore, the Debtors have not demonstrated a need to use SGIC's cash collateral in order to avoid immediate and irreparable harm, which is required by Fed. R. Bankr. Pro. 4001(b)(2).

## BACKGROUND

3.      The Debtors are indebted to SGIC pursuant to that certain Amended and Restated Loan and Security Agreement dated March 19, 2019 among SGIC, on one hand, and the Debtors and various affiliates of the Debtors, on the other hand (the "Loan Agreement").  Pursuant to the Loan Agreement, the Debtors granted SGIC a security interest in substantially all of their assets (the "Collateral") to secure all Obligations owed by the Debtors to SGIC and its Affiliates, as

defined in the Loan Agreement.  The Collateral includes "cash collateral" as that term is used in section 363(a) of the Bankruptcy Code.

4. SGIC perfected its security interest by filing a UCC-1 financing statement with the Florida Secretary of State on March 20, 2019 as File No. 201908175409.

5. The Obligations under the Loan Agreement total in excess of $9,757,846.

6. Steven Tucker, the ultimate owner of the Debtors, executed a "Bad Boy" Guaranty in favor of SGIC.

7. The parties entered into the Loan Agreement in the context of a broader restructuring transaction of the Debtors' business.  In conjunction with the Loan Agreement, Holding entered into a Purchase Agreement pursuant to which Holding acquired indirectly from a third-party investor group equity interests in Benefit Group and all of the equity interests in OnCall.

8. To facilitate the Purchase Agreement, the Debtors and their affiliates requested (i) SGIC to enter into the Loan Agreement to finance the purchase and continued operations, (ii) CD Paradise Management, LLLP ("Paradise"), an affiliate of SGIC, to provide management services, and (iii) SGIC and certain affiliates to provide certain guaranties of obligations of Holding and Benefit Group.

9. To induce SGIC and its affiliates to provide such accommodations and support, the Debtors and certain affiliates (the "iCan Parties") entered into an Option Agreement.  Pursuant to the Option Agreement, the iCan Parties granted an option to a designee of SGIC, Premier Administration Solutions, Inc. ("TPA"), Paradise, and Dale Schmidt to acquire the business conducted by the Debtors.  The consideration for granting the Option Agreement comprised of (i) SGIC's accommodations and support to facilitate the Purchase Agreement and (ii) a one-time payment of $100,000 to Mr. Tucker, which was paid in 2019.  In the event of an exercise of the

Option, the optionee exercising the option would be required to satisfy and release certain liabilities.

10. Upon the closing of the restructuring transactions, Mr. Tucker used $500,000 of the loan proceeds to pay himself a "transaction bonus."

11. The 2019 restructuring did not go well. After ongoing non-performance by the Debtors and forbearance by SGIC, in January 2021, SGIC finally sent a demand and acceleration letter to the Debtors. The parties engaged in settlement discussions, including a resolution whereby the Debtors would voluntarily surrender the Collateral to SGIC.

12. In February 2021, the Debtors proposed a voluntary surrender of the Collateral to SGIC. Accordingly, SGIC provided the Debtors with a proposed foreclosure and surrender agreement.

13. In March 2021, in lieu of a voluntary surrender, the Debtors instead proposed that SGIC designate an entity to exercise the option under the Option Agreement. Accordingly, at the Debtors' suggestion, an affiliate of SGIC (CTS VI, LLLP) exercised the option under the Option Agreement and the parties commenced negotiating and preparing the necessary option exercise transaction documents. As part of the contemplated transactions, SGIC or its assigns would have assumed and paid certain liabilities and would have released Mr. Tucker from his (substantial) personal liability.

14. In the midst of those activities, and SGIC's and its affiliates' good faith negotiations regarding the option exercise, without warning, the Debtors filed voluntary Chapter 11 petitions, apparently to seek leverage in the negotiations between the Debtors and SGIC and its affiliates, raising serious questions about the good faith of these filings.

# ARGUMENT

**I.    THE MOTION SHOULD BE DENIED BECAUSE SGIC'S INTEREST IN CASH COLLATERAL WILL NOT BE ADEQUATELY PROTECTED.**

15.     Under section 363(c)(2)(A) of the Bankruptcy Code, a debtor is not allowed to use cash collateral unless the debtor obtains the consent of the creditor with the secured interest in such cash collateral.  Here, SGIC has not consented to the Debtors' use of cash collateral.

16.     Alternatively, a debtor may obtain the use of cash collateral under section 363(c)(2)(B) if the Court, after notice and hearing, authorizes such use of cash collateral in accordance with the provisions of that section.  A prerequisite for a court's approval of a debtor's request to use cash collateral is that adequate protection be provided to the party with a secured interest in cash collateral under section 363(e).  *In re Delco Oil, Inc.*, 599 F.3d 1255, 1258 (11th Cir. 2010); *In re Martin*, 761 F.2d 472, 475 (8th Cir. 1985).  Section 361 provides that adequate protection may take the form of (1) periodic cash payments, (2) additional or replacement liens, and (3) such other relief as will result in the realization by the secured creditor of the indubitable equivalent of its interest in the property.  11 U.S.C. § 361.

17.     What constitutes adequate protection is decided on a case-by-case basis. *See, e.g.*, *In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017, 1019 (11th Cir. 1984) (requiring individual determination of value of secured interest and whether use of cash collateral threatens that value); *Matter of Karl A. Neise, Inc.*, 16 B.R. 600, 601 (Bankr. S.D. Fla. 1981) ("What constitutes adequate protection varies with the facts and circumstances of each particular case . . . ."); *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) ("the determination of adequate protection is a fact-specific inquiry . . . left to the vagaries of each case"); *In re Beker*

*Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986) (the application of adequate protection "is left to the vagaries of each case, but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process") (citation omitted).

18. The critical purpose of adequate protection is to guard against the diminution in the value of a secured creditor's collateral during the period when such collateral is being used by the debtor in possession. *Matter of Karl A. Neise, Inc.*, 16 B.R. 600, 601 (Bankr. S.D. Fla. 1981); *In re 495 Central Park Avenue Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992).

19. The Debtors bear the burden of proof of the issue of adequate protection. 11 U.S.C. § 363(p)(1).

20. For adequate protection, the Debtors propose to provide SGIC with a replacement lien. However, the Debtors have not demonstrated that a replacement lien will protect SGIC's interest in the Debtors' cash collateral from diminution in value, because they have not demonstrated that SGIC is protected by a sufficient "equity cushion".

21. The Debtors rightly acknowledge that SGIC has an interest in cash collateral, but nowhere does the Motion disclose the amount owed under the Loan Agreement. The Debtors cannot claim ignorance, as they received multiple demand letters from SGIC in January 2021, including a full itemized detail of the amount owed as of December 31, 2020: not less than $9,757,846.

22. The Debtors have also failed to establish that SGIC is protected by an equity cushion, because they have not established by any evidence presented to this Court as to the value of SGIC's collateral. The only "evidence" provided by the Debtors is their statement in footnote 4 that the Debtors' business is worth somewhere between $33 million to $60 million, based on an out-of-date net present value of the stream of premium payments that was projected to occur over

a ten year period. That valuation depended on account policy renewal assumptions and other assumptions that are no longer true. The Debtors' book of business has declined since August 2020, and the present bankruptcy cases will almost certainly mean a higher rate of non-renewals. The Debtors have not established that SGIC is protected by a sufficient equity cushion to allow the Debtors' use of cash collateral.

23. The only thing that is certain is that the Debtors propose to use up SGIC's cash collateral. The only evidence in the record, in the form of the budget attached to the Motion (the "Budget"), shows a steady decline in the Debtors' cash balance. The Debtors have provided no evidence that the value of SGIC's collateral base will be stable over the course of the period in which it seeks to use cash collateral.

24. In addition, the Debtors have not proposed to make monthly payments or any other form of adequate protection to ensure that SGIC realizes the indubitable equivalent of its interest in the property under 11 U.S.C. § 361(3).

25. Finally, the Debtors have also failed to demonstrate a need to use cash collateral on an emergency basis. Fed. R. Bankr. Pro. 4001(b)(2) provides that the court may authorize use of cash collateral on shorter than 14 days' notice but the court may authorize such use only to the extent necessary to avoid immediate and irreparable harm. The Motion and Budget show the Debtors have access to PPP loan proceeds of at least $386,000 to pay expenses. SGIC does not claim a perfected lien in those loan proceeds. They appear to be more than sufficient to pay projected expenses totaling $309,420 for the period of use. Therefore, there is no need to use cash collateral subject to SGIC's lien on an emergency basis.

**CONCLUSION**

For the foregoing reasons, SGIC respectfully requests that the Court deny the Debtors' motion for order authorizing use of cash collateral.

                                      */s/ Lara Roeske Fernandez*
                                      LARA ROESKE FERNANDEZ
                                      Florida Bar No. 0088500
                                      lfernandez@trenam.com
                                      TRENAM, KEMKER, SCHARF, BARKIN,
                                      FRYE, O'NEILL & MULLIS, P.A.
                                      101 E. Kennedy Blvd., Suite 2700
                                      Tampa, FL 33602
                                      Tel: (813) 223-7474
                                      *Attorneys for Southern Guaranty Insurance Company*

                                      */s/ Clinton E. Cutler*
                                      CLINTON E. CUTLER
                                      Minnesota Bar No. 158094 (*pro hac pending*)
                                      ccutler@fredlaw.com
                                      JAMES C. BRAND
                                      Minnesota Bar No. 387362 (*pro hac pending*)
                                      jbrand@fredlaw.com
                                      FREDRIKSON & BYRON, P.A.
                                      200 South Sixth St., Suite 4000
                                      Minneapolis, MN 55402
                                      Tel: (612) 492-7000
                                      *Attorneys for Southern Guaranty Insurance Company*

## VERIFICATION

I, Dale F. Schmidt, the CEO of Southern Guaranty Insurance Company, declare under penalty of perjury that the facts set forth in the preceding objection are true and correct according to the best of my knowledge, information, and belief based on my own personal knowledge and information supplied by people who report to me.

Dated: March 22, 2021

_____
Dale F Schmidt, CEO

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 23, 2021, a true and correct copy of the foregoing was furnished by Notice of Electronic Filing to: Jacqueline Calderin, Esq., jc@agentislaw.com; Robert P. Charbonneau, Esq., rpc@agentislaw.com; Office of the U.S. Trustee, USTPRegion21.M.M.ECF@usdoj.gov and to all those receiving electronic notice.

/s/ Lara Roeske Fernandez
Attorney